The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COLBY HUTTON and KELLEY RICE, on behalf of themselves and all others similarly situated,

　　　　　　　Plaintiffs,

　　and

STATE OF WASHINGTON,

　　　　　　　Plaintiff-Intervenor,

　　v.

PODS ENTERPRISES, LLC,

　　　　　　　Defendant.

NO. 2:25-cv-02025-RAJ

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT PODS ENTERPRISES, LLC'S MOTION TO DISMISS

Note for Motion Calendar:
February 20, 2026

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS
(2:25-cv-02025-RAJ)

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 2

III.    ARGUMENT ...................................................................................................... 2

        A.   CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject
             Lines ........................................................................................................ 3

             1.   A plaintiff need not plead common law tort elements to avoid preemption ...... 4

             2.   A plaintiff need not specifically plead fraud to avoid preemption .................... 7

             3.   CEMA complements CAN-SPAM ................................................................. 8

        B.   CEMA Does Not Violate the Dormant Commerce Clause ....................................... 9

             1.   The Supreme Court rejected PODS' per se extraterritoriality argument in
                  2023 ................................................................................................. 10

             2.   PODS does not allege and cannot establish discrimination under the
                  dormant Commerce Clause .................................................................... 14

             3.   PODS cannot establish a significant burden on interstate commerce nor
                  that any such burden outweighs CEMA's benefits to consumers ................... 16

IV.     CONCLUSION ................................................................................................. 20

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - i
(2:25-cv-02025-RAJ)

# TABLE OF AUTHORITIES

## Cases

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
107 F.4th 934 (9th Cir. 2024) ................................................................................. 4

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
622 F. Supp. 2d 935 (N.D. Cal. 2009) ..................................................................... 9

*Asis Internet Servs. v. Member Source Media, LLC*,
No. C-08-1321 EMC, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) ....................... 7

*Asis Internet Servs. v. Subscriberbase Inc.*,
No. 09-3503 SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ................................. 9

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
777 F.3d 712 (4th Cir. 2015) .............................................................................. 7–8

*Black Star Farms LLC v. Oliver*,
600 F.3d 1225 (9th Cir. 2010) ............................................................................... 15

*Booth v. Appstack, Inc.*,
No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ..................... 14

*Brown & Williamson Tobacco Corp. v. Pataki*,
320 F.3d 200 (2d Cir. 2003) .................................................................................. 16

*Brown v. Old Navy, LLC*,
567 P.3d 38 (Wash. 2025) .................................................................................. 6, 11

*Brummet v. Washington's Lottery*,
288 P.3d 48 (Wash. Ct. App. 2012) ......................................................................... 7

*Carmickle v. Comm'r, Soc. Sec. Admin.*,
533 F.3d 1155 (9th Cir. 2003) ............................................................................... 15

*Conway v. Taylor's Ex'r*,
66 U.S. 603 (1862) ................................................................................................. 9

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) .............................................................................................. 14

*Elcon Const., Inc. v. E. Washington Univ.*,
273 P.3d 965 (Wash. 2012) ..................................................................................... 6

*Ferguson v. Friendfinders, Inc.*,
94 Cal. App. 4th 1255 (2002) .......................................................................... 11, 17

*Gen. Motors Corp. v. Tracy*,
519 U.S. 278 (1997) .............................................................................................. 15

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - ii
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ................................................................................. 3–5, 8

*Harbers v. Eddie Bauer, LLC*,
   415 F. Supp. 3d 999 (W.D. Wash. 2019) ........................................................................ 8

*Harrington v. Vineyard Vines, LLC*,
   No. C25-1115TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ............................... 1, 4

*Hartman v. United Bank Card, Inc.*,
   291 F.R.D 591 (W.D. Wash. 2013) ............................................................................... 14

*Healy v. Beer Institute, Inc.*,
   491 U.S. 324 (1989).............................................................................................. 10, 12

*Heft v. Moore*,
   351 F.3d 278 (7th Cir. 2003) ....................................................................................... 15

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
   76 F.4th 1164 (9th Cir. 2023) ........................................................................................ 6

*Hickey v. Voxernet LLC*,
   887 F. Supp. 2d 1125 (W.D. Wash. 2012) ...................................................................... 3

*Hoang v. Reunion.com, Inc.*,
   No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ................................ 7

*Hypertouch Inc. v. ValueClick, Inc.*,
   123 Cal. Rptr. 3d 8 (Cal. App. 2011)............................................................................... 8

*In re Park W. Galleries, Inc.*,
   No. MDL 09-2076RSL, 2010 WL 56044 (W.D. Wash. Jan. 5, 2010) ............................... 19

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
   803 F.3d 389 (9th Cir. 2015) ......................................................................................... 9

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
   No. C08-1733JLR, 2009 WL 10676391 (W.D. Wash. May 27, 2009).............................. 6

*Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*,
   48 F.3d 391 (9th Cir. 1995) ......................................................................................... 16

*Ma v. Nike, Inc.*,
   No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026)................................ 1, 4

*Martin v. Miller*,
   600 P.2d 698 (Wash. Ct. App. 1979)............................................................................... 6

*MaryCLE, LLC v. First Choice Internet, Inc.*,
   890 A.2d 818 (Md. Ct. Spec. App. 2006)................................................................... 11, 17

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - iii
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ................................................................................................. 3

*Meilleur v. AT & T Inc.*,
    No. 11–1025 MJP, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011) ...................................... 3

*Minnesota v. Clover Leaf Creamery Co.*,
    449 U.S. 456 (1981) ............................................................................................... 19

*Mitchell v. Atkins*,
    483 F. Supp. 3d 985 (W.D. Wash. 2020) .................................................................... 15

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) ........................................................................... 18–19

*Nat'l Pork Producers Council v. Ross*,
    6 F.4th 1021 (9th Cir. 2021) .................................................................................. 17

*National Pork Producers Council v. Ross*,
    598 U.S. 356 (2023) ............................................................. 1, 9, 12–14, 16, 18

*Ohralik v. Ohio State Bar Ass'n*,
    436 U.S. 447 (1978) ............................................................................................... 19

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
    469 F.3d 348 (4th Cir. 2006) ........................................................................... 4–5, 7

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................... 13

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ......................................................................................... 16, 18

*Rocky Mtn. Farmers Union v. Corey*,
    730 F.3d 1070 (9th Cir. 2013) ............................................................................... 14

*Rosenblatt v. City of Santa Monica*,
    940 F.3d 439 (9th Cir. 2019) ................................................................................. 16

*Scott v. Cingular Wireless*,
    161 P.3d 1000 (Wash. 2007) ..................................................................................... 2

*State v. Heckel*,
    24 P.3d 404 (Wash. 2001) ....................................................................................... 17

*Stengel v. Medtronic*,
    704 F.3d 1224 (9th Cir. 2013) ................................................................................. 3

*Strassheim v. Daily*,
    221 U.S. 280 (1911) ............................................................................................... 14

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - iv
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Sullivan v. Oracle Corp.*,
   662 F.3d 1265 (9th Cir. 2011) ........................................................................................ 16

*Truesdell v. Friedlander*,
   80 F.4th 762 (6th Cir. 2023) ........................................................................................... 18

*United Res. Sys., Inc. v. Wilson*,
   614 F. Supp. 3d 243 (D.S.C. 2022) ................................................................................ 12

*Wagner v. Spire Vision*,
   No. C 13-04952 WHA, 2014 WL 889483 (N.D. Cal. Mar. 3, 2014) ................................ 7

*Ward v. United Airlines, Inc.*,
   986 F.3d 1234 (9th Cir. 2021) ....................................................................................... 17

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008).................................................................................................. 10, 18

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
   471 U.S. 626 (1985)....................................................................................................... 19

**Statutes**

15 U.S.C. § 7704(a)(2)........................................................................................................ 8

15 U.S.C. § 7707(b)(1) ....................................................................................................... 3

15 U.S.C. § 7707(b)(2) ....................................................................................................... 9

1998 Wash. Sess. Laws 517.............................................................................................. 19

Wash. Rev. Code § 19.190.020(1)..................................................................................... 10

Wash. Rev. Code § 19.190.020(1)(a) .................................................................................. 5

Wash. Rev. Code § 19.190.020(1)(b) ............................................................... 2, 4, 8, 11, 15

Wash. Rev. Code § 19.190.030(3)..................................................................................... 19

**Other Authorities**

H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on
   H.B. 2752 (Wash. 1998) ................................................................................................. 2

S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess.,
   Senate Bill Report on H.B. 1037 (Wash. 1999) ............................................................. 2

S. Rep. No. 108-102 .......................................................................................................... 5

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - v
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**<u>Constitutional Provisions</u>**

U.S. Const. art. VI, cl. 2..........................................................................................................3

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - vi
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## I.   INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from deceptive commercial email messages and makes sending them a violation of the Washington Consumer Protection Act (CPA). The federal Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) does not preempt CEMA. In arguing otherwise, Defendant PODS Enterprises, LLC ("PODS") tries to impose on plaintiffs a heightened fraud standard that is not found anywhere in either CEMA or CAN-SPAM. CAN-SPAM's preemption savings clause specifically carves out and preserves state statutes like CEMA that prohibit misleading or deceptive emails. PODS' cited authority does not support its argument that CEMA plaintiffs must plead fraud or another tort to avoid preemption, nor does PODS acknowledge the many courts that have rejected that argument.

CEMA also does not discriminate against out-of-state interests or otherwise violate the dormant Commerce Clause. Like many state laws, CEMA's protection may, at times, have a practical effect on people or companies outside Washington, but that occasional extraterritorial impact does not offend the United States Constitution. PODS' arguments misunderstand federal constitutional law and the operation of the interconnected modern economy. Moreover, the United States Supreme Court recently expressly—and unanimously—rejected PODS' argument in *National Pork Producers Council v. Ross*.[1] This Court should deny the motion, just as it has denied similar efforts in two recent orders. *See Harrington v. Vineyard Vines, LLC*, No. C25-1115TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025), *reconsideration denied*, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Ma v. Nike, Inc.*, No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026).

---

[1] 598 U.S. 356, 371 (2023).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 1
(2:25-cv-02025-RAJ)

## II.    BACKGROUND

Adopted in 1998, CEMA's application to email is narrow. At issue here, CEMA prohibits a person from sending email marketing messages containing "false or misleading information," specifically "in the subject line," to email addresses the sender knows or has reason to know belongs to Washington State residents. Wash. Rev. Code § 19.190.020(1)(b). The Attorney General's Office reported to the Legislature that during the five-month period before CEMA's passage, of 322 complaints received about unsolicited email, many were commercial advertisements and "spam [was] the highest category of consumer complaints" the office received overall. H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on H.B. 2752 (Wash. 1998). Legislative testimony emphasized that CEMA "allows expansion of Internet usage while curtailing abuses before they reach crisis." S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999).

## III.    ARGUMENT

The State intervenes for the limited purpose of defending CEMA's constitutionality pursuant to 28 U.S.C. § 2403(b). It takes no position with respect to other issues raised in the litigation. Overall, the State agrees with the arguments regarding CEMA's constitutionality in Plaintiffs' response brief. Dkt. 16 at 6-24. The State writes separately, however, to offer the perspective of the State's chief law enforcement officer as to CEMA's constitutionality, its proper interpretation, and the importance of private enforcement of consumer protection statutes like CEMA. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (observing "[p]rivate actions by private citizens are now an integral part of CPA enforcement" and that consumers "bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests").

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 2
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**A.      CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject Lines**

Preemption is a constitutional issue warranting the State's intervention under Rule 5.1. *See Gordon v. Virtumundo, Inc*., 575 F.3d 1040, 1060 (9th Cir. 2009) (citing U.S. Const. art. VI, cl. 2) (observing preemption doctrine "derives from the Supremacy Clause of the United States Constitution"); *ThermoLife Int'l LLC v. NeoGenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2020 WL 6395442, at *16 (D. Ariz. Nov. 2, 2020) (stating because preemption claims are constitutional in nature, state must be allowed to address such claims).

Any preemption analysis begins with the "presumption against supplanting the historic police powers of the States by federal legislation unless that is the clear and manifest purpose of Congress." *Virtumundo*, 575 F.3d at 1060 (cleaned up). "This presumption against preemption leads us to the principle that express preemption statutory provisions should be given narrow interpretation." *Id*. (cleaned up). PODS, as the party "seeking to invalidate a state law based on preemption bear[s] the considerable burden of overcoming this starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic,* 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (cleaned up). "Consumer protection is an area of traditional state authority creating a presumption against federal preemption." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) (citing *Meilleur v. AT & T Inc.,* No. 11–1025 MJP, 2011 WL 5592647 at *3 (W.D. Wash. Nov. 16, 2011)). Thus, the presumption against preemption applies to both the *existence* and *scope* of the alleged preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

As relevant here, CAN-SPAM's preemption clause is extremely limited. While it states that the statute supersedes any state law that "regulates the use of electronic mail to send commercial messages," it expressly exempts "any such statute" that "prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The CEMA provision at issue here does just that, prohibiting any email that "[c]ontains false or misleading information in the subject line."

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 3
(2:25-cv-02025-RAJ)

Wash. Rev. Code § 19.190.020(1)(b). This plain language should end the analysis. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024) (to interpret an express preemption clause, a court is required "to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law").

### 1.   A plaintiff need not plead common law tort elements to avoid preemption

Despite CAN-SPAM's plain language, PODS presses a restrictive reading of the preemption clause, asserting it saves only traditional tort theories like fraud from preemption. Dkt. 14 at 9-11 & n.2 (relying primarily on *Virtumundo*). This is incorrect as a matter of law and cannot be squared with PODS' own authorities.

Sixteen years ago, *Virtumundo* addressed the scope of CAN-SPAM's preemption clause as an issue of first impression in this circuit, relying in part on the then-only federal circuit court decision addressing the clause: *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). *Virtumundo,* 575 F.3d at 1059-60. However, neither *Virtumundo* nor *Omega* held that common law torts like fraud are the only state law claims saved from the CAN-SPAM preemption clause. To the contrary, both cases *confirm* the exception applies broadly to "traditionally tortious <u>or wrongful conduct</u>." *Virtumundo*, 575 F.3d at 1062 (quoting *Omega*, 469 F.3d at 354) (emphasis added). Far from supporting PODS' arguments, *Virtumundo* explained state law claims about deceptive email subject lines were not preempted. *Id*. at 1062 (observing legislative intent that "a State law prohibiting *fraudulent or deceptive* headers, subject lines, or content in commercial e-mail would not be preempted").

Thus, because CEMA's subject-line provision prohibits only "falsity" or "deception" in the subject-line of commercial e-mails, it "falls squarely within this area reserved to the States[.]" *Harrington*, 2025 WL 3677479, at *1; *see also Ma*, 2026 WL 100731, at *2 (same). This conclusion is supported by the Senate Report accompanying CAN-SPAM, which explained that although the purpose of the CAN-SPAM Act was to impose a single national standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and deception in e-mail do not raise

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 4
(2:25-cv-02025-RAJ)

the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." S. Rep. No. 108-102, at 21-22.

In any event, *Virtumundo* did not directly address deceptive email subject lines. Instead, it considered whether CAN-SPAM preempted the plaintiff's claims under CEMA's provision (1)(a), which prohibits email that "misrepresents or obscures" information about the sender. Wash. Rev. Code § 19.190.020(1)(a). That provision is not at issue here. In any event, unlike this case, the *Virtumundo* plaintiff admitted none of the emails at issue misled or deceived him "in any way." *Virtumundo*, 575 F.3d at 1063. Rather, he asserted the sender should have been "Virtumundo" rather than the abbreviated domain names they used. *Id*. at 1063-1064. The Ninth Circuit concluded that such "technical" allegations of "non-deceptive" inaccuracies or omissions are "at best" claims for "incomplete or less than comprehensive information." *Id*. at 1064. Understandably, the court concluded that to the extent that provision (1)(a) addressed non-deceptive acts and practices, this did not rise to the level of "wrongful conduct" or "falsity or deception" necessary to avoid preemption. *Id*. at 1062, 1064. The *Omega* court likewise was focused on state law claims that could potentially impose strict liability for "insignificant inaccuracies" or "bare error" rather than "falsity or deception." 469 F.3d at 352-56. This case, in contrast, is about provision 1(b), which <u>only</u> prohibits "false or misleading information" and cannot be read to impose liability for simple mistakes. *Virtumundo* and *Omega* thus do not support preemption.

Further, in *Virtumundo*, the Ninth Circuit acknowledged that CEMA's statutory framework at least suggested CEMA "extends only to deceptive commercial e-mail" rather than non-deceptive acts or mere clerical errors. *Id*. at n.17. When the Ninth Circuit decided *Virtumundo* in 2009, however, it observed that how narrowly or broadly to interpret CEMA was unsettled. 575 F.3d at 1059. The *Virtumundo* court thus concluded that "state courts may ultimately mold CEMA's broad language so as to cabin its breadth or interpret the law in conformity with federal legislation." *Id*. at 1059. Last year, following certification from this

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 5
(2:25-cv-02025-RAJ)

Court, the Washington State Supreme Court did just that in *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025).

In *Brown*, the court confirmed that CEMA's subject line provision does not prohibit mere technical errors or "mere puffery." *Id*. The *Brown* court held CEMA's subject line provision addresses deceptive "representations of fact—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions." *Id.* In short, CEMA's subject line provision prohibits false or deceptive statements about facts that would be important to consumer decision making, and to the extent there was any question, *Brown* thus harmonizes CEMA with CAN-SPAM.

Tellingly, PODS does not meaningfully address the *Brown* opinion, instead arguing that Plaintiff must "demonstrate that the allegedly false or misleading subject lines were material *to them*" to avoid preemption. Dkt. 14 at 13-14. This argument for pleading individualized reliance cannot stand after *Brown*, where the Washington State Supreme Court held that CEMA's subject line provision does not target puffery or "banal hyperbole" and instead allows for claims premised upon misrepresentations of fact to Washington consumers. 567 P.3d at 47. Nothing in the *Brown* opinion requires an individualized assessment or pleading of reliance by each plaintiff.

PODS' reliance upon *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009), to support its argument is mystifying. In that case, Judge Robart rejected the very same argument PODS advances here, i.e., that a plaintiff is required to allege all elements of fraud to bring a CEMA claim. PODS' citations to *Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 970 (Wash. 2012), *Martin v. Miller*, 600 P.2d 698, 700 (Wash. Ct. App. 1979), and *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023), fare no better. Those cases dealt with a "fraudulent inducement" claim and actual fraud claims, respectively, not CEMA. Likewise,

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 6
(2:25-cv-02025-RAJ)

PODS' citation to *Brummet v. Washington's Lottery*, 288 P.3d 48, 54 (Wash. Ct. App. 2012) misses the mark. The case does not involve CEMA.

### 2.    A plaintiff need not specifically plead fraud to avoid preemption

PODS argues CEMA must require proof of elements of "traditional tort theories such as claims arising from fraud or deception" to avoid preemption. Dkt. 14 at 12. But consumer protection statutes such as CEMA do not sound in fraud, and "[t]he great weight of district court and state court decisions" reject a requirement that consumers plead "all the elements of common law fraud," including damages or reliance, to avoid preemption of their anti-spam law claims. *Wagner v. Spire Vision*, No. C 13-04952 WHA, 2014 WL 889483, at *2-4 (N.D. Cal. Mar. 3, 2014) (collecting cases); *Asis Internet Servs. v. Member Source Media, LLC*, No. C-08-1321 EMC, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010) (considering California's subject line provision, *Virtumundo*, and CAN-SPAM's preemption clause, and holding plaintiff "need not plead reliance and damages in order for its claim to be excepted from preemption"); *Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535, at *6 (N.D. Cal. Mar. 31, 2010) (reversing dismissal under *Virtumundo*, holding failure to allege detrimental reliance was not proper grounds for dismissal). This Court should not impose extraneous non-statutory fraud standards here.

CEMA's prohibition on false or misleading subject lines, like similar consumer protection statutes, reflects policy decisions about wrongful conduct for which there was no common law tort remedy. A plaintiff need not allege the elements of fraud because the statute has already defined the wrongful behavior. For similar reasons, the Fourth Circuit concluded that neither California nor Maryland's anti-spam statutes were preempted despite neither one requiring pleading or proof of the elements of fraud. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) (citing *Omega*, 469 F.3d 348). Looking at Maryland's statute, the court found that the state appellate court's earlier conclusion that violations of the anti-spam statute, "like violations of the Consumer Protection Act," impose liability for wrongful conduct

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 7
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

similar to tort, was sufficient to avoid preemption. *Id*. at 717. Turning to California's statute, the Fourth Circuit likewise noted that (like *Brown*), a state appellate court "limit[ed] the application of California's anti-spam law to deceptive emails" and therefore was not preempted. *Id.* (quoting *Hypertouch Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8 (Cal. App. 2011)). The *Hypertouch* court had already held California's anti-spam law "dispenses with many of the elements associated with common law fraud." *Hypertouch*, 123 Cal. Rptr. 3d. These courts rejected PODS' proposed rule here that the elements of fraud—or some other traditional tort theory—must be pled to avoid preemption. This Court, too, made a similar finding when concluding a plaintiff had Article III standing when making a CEMA claim: "[t]he harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer*, *LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019). The Court should likewise reject PODS' effort here to impose additional pleading requirements on CEMA plaintiffs.

### 3.    CEMA complements CAN-SPAM

PODS' preemption argument also undermines Congress' purpose in enacting CAN-SPAM. A preemption analysis is "guided by the oft-repeated comment that the purpose of Congress is the ultimate touchstone in every preemption case." *Virtumundo*, 575 F.3d at 1060 (cleaned up). Here, CEMA's subject line provision aligns with Congress' purpose in enacting CAN-SPAM—a purpose which would not be served by preempting or narrowing CEMA. Congress enacted CAN-SPAM in 2003 to "curb the negative consequences of spam and spamming practices without stifling legitimate commerce." *Id*. at 1045. CAN-SPAM's prohibition on deceptive or misleading information in email subject lines is one means of accomplishing this purpose. 15 U.S.C. § 7704(a)(2). CEMA's subject line provision supports this same goal by prohibiting "false or misleading" information in email subject lines. Wash. Rev. Code § 19.190.020(1)(b). Congress chose to expressly save such state law claims regarding "falsity or deception" from preemption without requiring plaintiffs to plead "fraud." As one court observed, Congress "is certainly familiar with the word 'fraud'" but chose not to

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 8
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

use it even though it "utilized the word 'fraud' in the very next subsection but not in the savings clause." *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) (citing 15 U.S.C. § 7707(b)(2)).

Finally, requiring higher, more stringent pleading standards for claimants does not serve any congressional purpose. *Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-3503 SC, 2010 WL 1267763, at *11-12 (N.D. Cal. Apr. 1, 2010) (stating the focus of CAN-SPAM is on the "behavior of advertisers," and "adding the traditional fraud elements of reliance and damages does not add anything to Congress's efforts to create a uniform system of regulation governing email advertisements"). PODS' argument undermines, rather than protects, the federal interest in CAN-SPAM.

**B.     CEMA Does Not Violate the Dormant Commerce Clause[2]**

PODS' dormant Commerce Clause argument is likewise contrary to governing authority. PODS' primary argument—which asks this Court to invalidate state law for its extraterritorial *impact* based on mere speculation and hypotheticals—relies on a line of cases that is of limited value following the Supreme Court's decision in *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023). But state laws only violate the dormant Commerce Clause when they discriminate in favor of their own residents and economic interests, to the detriment of out-of-state residents or interests. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015). "Preventing state officials from enforcing a democratically adopted state law in the name of the dormant Commerce Clause is a matter of 'extreme delicacy,' something courts should do only 'where the infraction is clear.'" *Nat'l Pork Producers*, 598 U.S. at 390 (quoting *Conway v. Taylor's Ex'r*, 66 U.S. 603, 634 (1862)). Thus, federal courts must utilize "extreme caution" before deploying the "implied authority" of the dormant Commerce Clause. *Nat'l Pork Producers*, 598 U.S. at 390 (internal quotation marks omitted). Applying the correct

---

[2] The State joins in Plaintiffs' arguments regarding the dormant Commerce Clause. Dkt. 16 at 18-24.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 9
(2:25-cv-02025-RAJ)

standard, PODS fails to show that CEMA is discriminatory or to otherwise show that CEMA substantially burdens interstate commerce.

**1.   The Supreme Court rejected PODS' per se extraterritoriality argument in 2023**

PODS' primary dormant Commerce Clause challenge to CEMA is a facial challenge based upon the argument that CEMA directly controls commerce occurring entirely outside of Washington's borders. In support, PODS relies primarily upon *Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989), and other cases relying on *Healy*, for the claim that such statutes are "per se invalid." Dkt. 14 at 15, 16 (quoting *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015)). But PODS' reliance on the *Healy* line of cases is misplaced for two reasons.

First, PODS' claim that CEMA directly controls commerce occurring entirely outside of Washington is based upon hypotheticals about plaintiffs' location at the time of receipt of the emails or self-serving claims about what PODS thinks CEMA covers ("CEMA purports to directly regulate, for example, the conduct of PODS sending commercial emails to a California resident who created an email address while attending college in Washington twenty years ago."). Dkt. 14 at 18.

PODS' hypotheticals and speculation underscore why facial challenges are so disfavored. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, 450–51 (2008) (facial challenges are disfavored because they "often rest on speculation," "run contrary to the fundamental principle of judicial restraint" and "threaten to short circuit the democratic process"). PODS' arguments ignore the plain language of CEMA, which requires either (1) "a computer located <u>in Washington</u>" or (2) "an electronic mail address that the sender knows, or has reason to know, is held by <u>a Washington resident</u>." Wash. Rev. Code § 19.190.020(1) (emphasis added). A "Washington resident" is not a "California resident," and PODS' attempt to conflate the two is not credible.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 10
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

As to PODS' concern that a Washington resident may receive an email while temporarily out of state, this ignores the clear Washington connection required by CEMA—the requirement the email is sent to a Washington resident. *See, e.g.*, *Brown*, 567 P.3d at 45 (CEMA "targets a specific deceptive commercial practice: sending Washington residents commercial e-mails that contain 'false or misleading information in the subject line[s].'") (quoting Wash. Rev. Code § 19.190.020(1)(b)). This scenario does not offend the Constitution, and PODS' hypotheticals cannot change the fact that Wash. Rev. Code § 19.190.020(1)(b) is focused upon activity targeting Washington consumers. By contrast, courts have upheld dormant Commerce Clause challenges to similar statutes. *See Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255 (2002); *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818 (Md. Ct. Spec. App. 2006). Simply put, a company that directs its commercial email to Washington residents does not get a free pass from compliance with Washington law when the resident is temporarily traveling out of state. PODS mischaracterizes *MaryCLE* as upholding a law similar to CEMA but only because "the regulation applied only to transactions that used a computer in Maryland or were sent to an address in Maryland." Dkt. 14 at 17. On the contrary, the *MaryCLE* court expressly held there was no dormant Commerce Clause violation because "[i]n order to violate the Act, an email advertiser must either use equipment located in the State of Maryland or send prohibited [email] to someone he knows or should know is a Maryland resident." *MaryCLE*, 890 A.2d at 844 (emphasis added). The *MaryCLE* court noted that the defendant's "business decision" to send email "all over the country, invoking the probability that it will be received by Maryland residents" was "markedly different" than the "practical effects" involved in the Supreme Court's extraterritoriality cases. *Id.* at 842-43. Moreover, both *Ferguson* and *MaryCLE* were decided well before the Supreme Court's opinion in *National Pork Producers* clarified *Healy* and rejected the per se rule against extraterritoriality.

Second, given the unquestionable connection to Washington residents, PODS' argument goes to CEMA's alleged extraterritorial *impact*, which is an insufficient basis to invalidate a

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 11
(2:25-cv-02025-RAJ)

state law under the dormant Commerce Clause. In *National Pork Producers*, the United States Supreme Court unanimously rejected the idea that *Healy* stands for the almost per se rule against extraterritoriality that PODS advocates for here. 598 U.S. at 368.

There is no blanket rule against state statutes with extraterritorial effects. If there was such a rule, it is hard to imagine how the interconnected modern economy would continue to function. *Nat'l Pork Producers*, 598 U.S. at 374-75 ("In our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior."). It is true that historically, courts observed that the extraterritorial application of certain state laws raised dormant Commerce Clause concerns. In *Healy*, the Supreme Court noted that in some situations "a statute that directly controls commerce occurring wholly outside the boundaries of a state exceeds the inherent limits of the enacting State's authority." 491 U.S. at 336. Under *Healy*, then, such legislation may have the "practical effect . . . [of] control[ing] conduct beyond the boundaries of the State." *Id.* In the years that followed, some courts read *Healy* to mean that in addition to the classic tests for dormant Commerce Clause challenges (*see* Part B(2), *infra*), there existed a separate rule prohibiting statutes with extraterritorial effects. *See, e.g.*, *United Res. Sys., Inc. v. Wilson*, 614 F. Supp. 3d 243, 256 (D.S.C. 2022).

In 2023, however, the Supreme Court clarified that extraterritorial effects alone do not violate the dormant Commerce Clause. Petitioners in *National Pork Producers v. Ross* challenged California's law governing farm conditions for pork sold in California. Petitioners conceded the law did not "seek[] to advantage in-state firms or disadvantage out-of-state rivals." *Nat'l Pork Producers*, 598 U.S. at 370. According to the Court, this left them in a "tough spot" pursuing "two more ambitious theories." *Id.* at 371.

> In the first, petitioners invoke what they call "extraterritoriality doctrine." They contend that our dormant Commerce Clause cases suggest an additional and "almost *per se*" rule forbidding enforcement of state laws that have the "practical effect of controlling commerce outside the State," even when those laws do not purposely discriminate against out-of-state economic interests. Petitioners further

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 12
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

insist that Proposition 12 offends this "almost *per se*" rule because the law will impose substantial new costs on out-of-state pork producers who wish to sell their products in California.

*Id.* (citations omitted). In support of those arguments, petitioners cited *Healy*, the same case PODS relies on here.

The Court then squarely rejected the argument that *Healy* stands for the *per se* proposition that laws with extraterritorial effects violate the dormant Commerce Clause. Concluding that "petitioners read too much into too little," the Court explained that the challenged statutes in *Healy* and other extraterritoriality cases "had a *specific* impermissible 'extraterritorial effect'—they deliberately 'prevent[ed out-of-state firms] from undertaking competitive pricing' or 'deprive[d] businesses and consumers in other States of 'whatever competitive advantages they may possess.'" *Nat'l Pork Producers*, 598 U.S. at 371 (quoting *Healy*, 491 U.S. at 338-39). Although several Justices wrote separately, "the Court unanimously disavow[ed] petitioners' 'almost per se' rule against laws with extraterritorial effects." *Id.* at 389 n.4; *see also id.* at 394 (Roberts, C.J., concurring in part); *id.* at 403, n.1 ("The Court also unanimously rejects plaintiffs' separate claim under *Healy* . . . .") (Kavanaugh, J., concurring in part).

In rejecting an almost per se rule against extraterritoriality, the Court clarified that it did not "trivialize the role territory and sovereign boundaries play in our federal system." *Nat'l Pork Producers*, 598 U.S. at 375-76. Instead, it explained that other express provisions of the Constitution, including the Due Process Clause and the Full Faith and Credit Clause may be relevant to the analysis. *Id.* (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985)). Those provisions are not at issue here. But even if they were at issue, they support CEMA's extraterritorial application to Washington residents temporarily outside the state's borders, because Washington undoubtedly has a state interest in protecting its consumers, including those who are temporarily outside the state. *See Phillips Petroleum Co.*, 472 U.S. at 818 (under the Due Process Clause, a state may apply its law as long as it has "a significant contact or significant

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 13
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair"); *Nat'l Pork Producers*, 598 U.S. at 376 (observing that a State's extraterritorial reach ends at "acts committed 'outside [the first State's] jurisdiction' that are not 'intended to produce [or that do not] produc[e] detrimental effects within it") (quoting *Strassheim v. Daily*, 221 U.S. 280, 285 (1911)). Cases striking down laws under these provisions are limited to those instances where the challenged regulation governs extraterritorial conduct involving individuals "with *no* connection to the State." *Nat'l Pork Producers*, 598 U.S. at 376 n.1 (distinguishing *Edgar v. MITE Corp.*, 457 U.S. 624 (1982)). Accordingly, they are vastly different from CEMA, which protects Washington consumers and requires either a computer located in Washington or an email sent to a Washington resident. PODS' reliance upon cases from the Western District interpreting the Washington Automatic Dialing and Announcing Device statute (WADAD) is misplaced. Dkt. 14 at 16-17 (citing *Hartman v. United Bank Card, Inc.*, 291 F.R.D 591 (W.D. Wash. 2013); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015)). These cases rely on *Healy* for the purported rule against extraterritoriality and were decided before *National Pork Producers*. PODS' primary dormant Commerce Clause argument does not reflect the current governing law.

### 2. PODS does not allege and cannot establish discrimination under the dormant Commerce Clause

Applying the proper standard, the threshold question in the dormant Commerce Clause inquiry is whether the law is discriminatory. *See Rocky Mtn. Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013). In this context, the term "discrimination" has a specific meaning: "'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Rocky Mtn. Farmers Union*, 730 F.3d at 1087 (citation omitted). Thus, "[m]ere differential treatment of in-state and out-of-state interests is insufficient to establish discrimination. Rather, there must be some economic benefit to in-state interests or

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 14 (2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

some economic burden on out-of-state interests." *Mitchell v. Atkins*, 483 F. Supp. 3d 985, 997 (W.D. Wash. 2020), *vacated and remanded on other grounds by Michell v. Atkins*, No. 20-35827, 2022 WL 17420766 (9th Cir. Dec. 2, 2022) (citation omitted).

It is well established that the "party challenging the statute bears the burden of showing discrimination." *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010). Despite this, PODS fails to address discrimination in its motion. For example, PODS' brief does not explain how CEMA could benefit Washington economic interests at the expense of out-of-state interests. PODS has thus waived any argument on this issue. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 n.2 (9th Cir. 2003) (concluding an issue not argued with specificity in briefing will not be addressed); *Heft v. Moore*, 351 F.3d 278, 285 (7th Cir. 2003) ("The failure to cite cases in support of an argument waives the issue . . . .").

Even if PODS had not waived the issue, it cannot establish discrimination. CEMA has absolutely nothing to do with local economic protectionism. Discrimination under the dormant Commerce Clause is not an abstract notion comparing generic economic interests. Rather, "any notion of discrimination assumes a comparison of substantially similar entities." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997); *Black Star Farms*, 600 F.3d at 1230 ("Differential treatment must be as between persons or entities who are similarly situated.") (quotation omitted). Thus, to establish discrimination under the dormant Commerce Clause, PODS (an out-of-state company) must establish that CEMA economically disadvantages it compared to a substantially similar commercial email messenger located in Washington. PODS' briefing contains no such analysis and in any event, there is no benefit to in-state commercial email sender at the expense of out of state commercial email sender. It is just as illegal for a Washington company to send an unpermitted or misleading commercial email message to a Washington resident without prior authorization as it is for an out-of-state company to send the same email. Wash. Rev. Code § 19.190.020(1)(b) (prohibiting any "person" from sending misleading

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 15
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

commercial emails). CEMA is a valid exercise of the State's police powers, and it evenhandedly prevents misleading commercial email messages sent to or from Washington without prior consent.

### 3.    PODS cannot establish a significant burden on interstate commerce nor that any such burden outweighs CEMA's benefits to consumers

Because CEMA is a non-discriminatory law, it is presumptively valid unless any burden on interstate commerce is "'clearly excessive in relation to the putative local benefits.'" *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This weighing of the burden and benefits of a non-discriminatory law is often referred to as "*Pike* balancing." *See Nat'l Pork Producers*, 598 U.S. at 393 (Barrett, J., concurring). As the Ninth Circuit has recognized, "only a small number of cases invalidating laws under the dormant Commerce Clause have involved laws that were genuinely nondiscriminatory but still imposed a clearly excessive burden on interstate commerce." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020) (cleaned up). *Pike* balancing "does not invite courts to second-guess legislatures by estimating the probable costs and benefits of the statute." *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003). Rather, the Court must "presume the law serves the [state's] legitimate interests." *Rosenblatt*, 940 F.3d at 452. PODS, as the party challenging CEMA, bears the burden on this issue. *Id.*; *Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 399 (9th Cir. 1995) (stating party challenging law must "establish that the burdens that the regulation imposes on interstate commerce clearly outweigh the local benefits arising from it").

PODS attempts to meet its burden by claiming that "CEMA facially creates a de facto nationwide standard for commercial email." Dkt. 14 at 2. But this bold claim relies upon PODS' incorrect premise that CEMA regulates all email traffic with no connection whatsoever to Washington. As discussed above, that argument is neither factually nor legally sound.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 16
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

PODS next takes aim at the very thing it seeks to read out of the statute, the requirement of Washington residency, by claiming that a large, sophisticated company like PODS will be subject to an "onerous burden" if it is forced to determine the residency of email recipients before sending emails with false or misleading information in the subject line. Dkt. 14 at 21. This argument fails because "[t]he mere fact that a firm engaged in interstate commerce will face increased costs as a result of complying with state regulation does not, on its own, suffice to establish a substantial burden on interstate commerce." *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1241–42 (9th Cir. 2021); *see also Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1032 (9th Cir. 2021) ("For dormant Commerce Clause purposes, laws that increase compliance costs, without more, do not constitute a significant burden on interstate commerce.").

PODS pointedly ignores that other states require the exact same thing. *See, e.g.*, *Ferguson*, 94 Cal. App. 4th at 1262; *MaryCLE*, 890 A.2d at 843 (Maryland antispam law "only mandates that all email addressed to Maryland residents be truthful and non-deceptive"). Any hypothetical "burden" on PODS is merely the burden to comply with the law—the same burden in California and Maryland, at the very least—and the solution to is simply to not send thousands of emails with false or misleading subject lines. No one is forcing PODS to send unsolicited email messages—let alone misleading or deceptive email messages—to anyone, let alone to Washington consumers. Indeed, in *State v. Heckel*, 24 P.3d 404, 406 (Wash. 2001), *cert. denied*, 534 U.S. 997 (2001), the Washington State Supreme Court held that CEMA's prohibition of misleading commercial email messages "does not unduly burden interstate commerce."[3]

Because PODS has failed to show that CEMA substantially burdens interstate commerce,

---

[3] The *Heckel* court similarly recognized that extraterritoriality may implicate jurisdictional questions, but that those questions are unrelated to the dormant Commerce Clause analysis and should be analyzed under a separate framework. 24 P.3d at 412. In any event, *Heckel* was also decided before *National Pork Producers* clarified the relationship between extraterritoriality and the dormant Commerce Clause.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 17
(2:25-cv-02025-RAJ)

*Pike* balancing is unnecessary. The plurality opinion in *National Pork Producers* "held that courts should not even attempt to quantify a state law's local 'benefits' or compare those benefits to the law's costs unless a challenger has <u>first shown</u> that the law inflicts 'substantial burdens' on interstate commerce[.]" *Truesdell v. Friedlander*, 80 F.4th 762, 774 (6th Cir. 2023) (emphasis added) (citing 598 U.S. at 383-89) *cert. denied*, 144 S. Ct. 1344 (2024), and *cert. denied*, 144 S. Ct. 1346 (2024). Accordingly, because PODS fails to establish such substantial burdens on interstate commerce, this Court does not need to address CEMA's local benefits.

PODS claims there is minimal benefit to Washington because, in PODS' estimate, CAN-SPAM provides "an existing federal standard addressing the same type of conduct." Dkt. 14 at 21. But this argument proves too much. If CAN-SPAM already protects what CEMA protects, PODS cannot send misleading or improper emails to any consumer in the United States, and thus, compliance with CEMA imposes absolutely no burden on PODS. In any event, this argument improperly asks the Court to read out the preemption exception in CAN-SPAM. Nevertheless, as explained herein and as detailed by the Washington Legislature, the State has its own interests in protecting Washington consumers, and the U.S. Congress has affirmatively carved out breathing room for states' traditional consumer protection statutes in this space.[4]

Should the Court decide to complete the *Pike* balancing test, however, it bears repeating that "*Pike* discusses whether the burden on interstate commerce is 'clearly excessive in relation to the *putative* local benefits.'" *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1155 (9th Cir. 2012) (quoting *Pike*, 397 U.S. at 142) (emphasis in original). *Pike* "does not mention actual benefits as part of the test" for assessing a dormant Commerce Clause

---

[4] PODS also cites the wrong standard for facial challenges in connection with this argument. Dkt. 14 at 22 (quoting *Wash. State Grange*, 552 U.S. at 449 n.6). As explained by the *Grange* Court, the standard from footnote 6 is a "second type of facial challenge in the First Amendment context." *Wash. State Grange*, 552 U.S. at 449 n.6. PODS has raised no First Amendment challenge to CEMA. As such, PODS "can only succeed in a facial challenge by establishing that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications" or at minimum, that the statute has no "plainly legitimate sweep." *Id.* at 449 (cleaned up).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 18
(2:25-cv-02025-RAJ)

violation. *Id.* The putative benefits of CEMA are plain: avoiding the harassment of and potential cost to consumers by unwanted commercial email messages, which are "matters vitally affecting the public interest." Wash. Rev. Code § 19.190.030(3). This is exactly what the Washington Legislature stated when passing the law:

> The legislature finds that the volume of commercial electronic mail is growing, and the consumer protection division of the attorney general's office reports an increasing number of consumer complaints about commercial electronic mail . . . The legislature seeks to provide some immediate relief to interactive computer service providers by prohibiting the sending of commercial electronic mail messages that . . . misrepresent the message's point of origin, or contain untrue or misleading information in the subject line . . . .

1998 Wash. Sess. Laws 517 (former Wash. Rev. Code § 19.190.005). And "[c]ourt[s] will assume that the objectives articulated by the legislature are actual purposes of the statute, unless an examination of the circumstances forces [courts] to conclude that they could not have been a goal of the legislation." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n. 7 (1981) (internal quotation omitted).

Additionally, a misleading commercial email message prohibited by CEMA "is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act[.]" Wash. Rev. Code § 19.190.030(3). Federal courts have recognized that states have an important interest in protecting the public from unfair and deceptive business practices. *See, e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) (citing the "general interest in protecting consumers and regulating commercial transactions" in stating that "[t]he state interests implicated in this case are particularly strong"); *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985) (recognizing "the state's interest in preventing deception of consumers"); *In re Park W. Galleries, Inc.*, No. MDL 09-2076RSL, 2010 WL 56044, at *4 (W.D. Wash. Jan. 5, 2010) (recognizing that "the protection of consumers" "advances legitimate state interests" in the dormant Commerce Clause arena). In sum, even under the *Pike* balancing test, CEMA does not

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS - 19
(2:25-cv-02025-RAJ)

violate the dormant Commerce Clause.

## IV.   CONCLUSION

The State respectfully requests that the Court deny PODS' constitutional challenges to CEMA.

NICHOLAS W. BROWN
Attorney General


*s/ Ben Brysacz*

BEN BRYSACZ, WSBA #54683
ROBERT HYDE, WSBA #33593
CLAIRE MCNAMARA, WSBA #50097
Assistant Attorneys General
Attorneys for Plaintiff-Intervenor State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-474-7744
ben.brysacz@atg.wa.gov
robert.hyde@atg.wa.gov
claire.mcnamara@atg.wa.gov

*I certify that this memorandum contains 6,541 words, in compliance with the Local Civil Rules.*

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 20
(2:25-cv-02025-RAJ)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744