The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COLBY HUTTON and KELLEY RICE, on behalf of herself and all others similarly situated,

                              Plaintiffs,

        and

STATE OF WASHINGTON,

                              Plaintiff-Intervenor,

        v.

PODS ENTERPRISES, LLC,

                              Defendant.

No. 2:25-cv-02025-RAJ

DEFENDANT PODS ENTERPRISES, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS

*Oral Argument Requested*

NOTED ON MOTION CALENDAR: February 20, 2026

PODS'S REPLY I.S.O. MOT. TO DISMISS
(No. 2:25-cv-02025-RAJ)

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT .........................................................................................................2

        A.      Plaintiffs Fail to Allege a CEMA Violation. ........................................2

                1.      Plaintiffs Cannot Assert Claims for Emails They Did Not Receive. .........2

                2.      The Subject Lines Are Not False or Misleading. ....................................2

                3.      Plaintiffs Fail to Allege PODS Knew Their Emails Belonged to
                        Washington Residents. ............................................................................3

        B.      CAN-SPAM Preempts Plaintiffs' Broad Application of CEMA. ........................4

                1.      "Misleading" Is Broader than "Falsity or Deception." .............................4

                2.      Plaintiffs Admit They Must Allege PODS's Statements Were
                        Material to Avoid Preemption. ..................................................................6

                3.      Plaintiffs Cannot Allege Knowledge, Reliance, or Injury. .......................8

        C.      CEMA Is Invalid Under the Dormant Commerce Clause. .............................10

                1.      CEMA Regulates Entirely Extraterritorial Conduct. .............................10

                2.      CEMA Excessively Burdens Interstate Commerce. .............................14

        D.      Plaintiffs Admit Their CPA Claim Fails. ...........................................................16

        E.      Plaintiffs' Claim for Actual and Treble Damages Fails. ...................................16

III.    CONCLUSION ....................................................................................................17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. King County*,
164 Wn.2d 640 (2008) ...........................................................................................................9

*Ashlynn Mktg. v. Pan*,
2025 WL 1953229 (S.D. Cal. July 16, 2025) ........................................................................10

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
622 F. Supp. 2d 935 (N.D. Cal. 2009) ....................................................................................7

*Asis Internet Servs. v. Member Source Media, LLC*,
2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) .........................................................................7

*Asis Internet Servs. v. Subscriberbase Inc.*,
2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ........................................................................7, 9

*Ass'n for Accessible Meds. v. Bonta*,
766 F. Supp. 3d 1020 (E.D. Cal. 2025), *appeal filed*, No. 25-1694 (9th Cir. Mar. 14, 2025)
.........................................................................................................................................*passim*

*Ass'n for Accessible Meds. v. Ellison*,
704 F. Supp. 3d 947 (D. Minn. 2023), *aff'd*, 140 F.4th 957 (8th Cir. 2025) ...........................11

*Brown v. Old Navy, LLC*,
4 Wn.3d 580, 595 (2025) ............................................................................................3, 6, 7, 16

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
2011 WL 3471476 (W.D. Wash Aug. 8, 2011) ........................................................................4

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...................................................................................................3

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ................................................................................................................13

*Fecht v. Price Co.*,
70 F.3d 1078 (9th Cir. 1995) ...................................................................................................8

*Ferguson v. Quinstreet, Inc.*,
2008 WL 3166307 (W.D. Wash. Aug. 5, 2008), *aff'd sub nom.,* 348 F. App'x 255 (9th Cir.
2009) .........................................................................................................................................6

*Flynt v. Bonta*,
131 F.4th 918 (9th Cir. 2025) .............................................................................................10, 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Goddard v. Google Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) .................................................................................8

*Gordon v. Impulse Mktg. Grp., Inc.*,
    375 F. Supp. 2d 1040 (E.D. Wash. 2005) .............................................................................6

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ...................................................................................*passim*

*Harbers v. Eddie Bauer, LLC*,
    415 F. Supp. 3d 999 (W.D. Wash. 2019) ..............................................................................6

*Harrington v. Vineyard Vines, LLC*,
    2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ..................................................................6

*In re Gilead Scis. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................................14

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
    803 F.3d 389 (9th Cir. 2015) .........................................................................................10, 14

*Iowa Pork Producers Ass'n v. Bonta*,
    2024 WL 3158532 (9th Cir. June 25, 2024), *cert. denied*, 145 S. Ct. 2866 (2025) ...............12

*Jang v. Life Ins. Co.*,
    2017 WL 11632250 (C.D. Cal. Sept. 22, 2017) ..................................................................17

*Jones v. County of San Bernardino*,
    2022 WL 3138880 (C.D. Cal. May 12, 2022) .....................................................................17

*Kempf v. FullBeauty Brands Operations, LLC*,
    2026 WL 395677 (W.D. Wash. Feb. 12, 2026) ..........................................................4, 6, 12

*Kousisis v. United States*,
    605 U.S. 114 (2025) ........................................................................................................7, 8

*Ma v. Nike, Inc.*,
    2026 WL 100731 (W.D. Wash. Jan. 14, 2026) ....................................................................6

*Mason v. Mortg. Am., Inc.*,
    114 Wn.2d 842 (1990) .......................................................................................................17

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ...............................................................................................2

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) ...........................................................................................14

PODS'S REPLY I.S.O. MOT. TO DISMISS – iii
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Nat'l Shooting Sports Found. v. Bonta*,
  718 F. Supp. 3d 1244 (S.D. Cal. 2024), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal. Mar. 31, 2025)............................................................................................................11, 12, 14

*National Pork Producers Council v. Ross*,
  598 U.S. 356 (2023)...............................................................................................1, 10, 11

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
  469 F.3d 348 (4th Cir. 2006) .........................................................................................9, 15

*Paris v. Steinberg & Steinberg*,
  828 F. Supp. 2d 1212 (W.D. Wash. 2011)...........................................................................16

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)......................................................................................................13

*Rocky Mountain Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013) ..........................................................................................10

*S.-Cent. Timber Dev., Inc. v. Wunnicke*,
  467 U.S. 82 (1984).......................................................................................................16

*S.D. Myers, Inc. v. City & Cnty. of S.F.*,
  253 F.3d 461 (9th Cir. 2001) ...........................................................................................14

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) ...................................................................................*passim*

*Sams v. Yahoo! Inc.*,
  713 F.3d 1175 (9th Cir. 2013) .............................................................................................8

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*,
  64 Wn. App. 553 (1992) ..................................................................................................17

*Silvas v. E*Trade Mortg. Corp.*,
  514 F.3d 1001 (9th Cir. 2008) .............................................................................................6

*Silverstein v. Keynetics Inc.*,
  2016 WL 7475616 (N.D. Cal. Dec. 29, 2016), *aff'd*, 727 F. App'x 244 (9th Cir. 2018)......7, 8

*State v. Heckel*,
  143 Wn.2d 824 (2001) ................................................................................................13, 15

*Stephens v. Omni Ins. Co.*,
  138 Wn. App. 151 (2007), *aff'd sub nom*, 166 Wn.2d 27 (2009)............................................4

*Thompson v. United States*,
  604 U.S. 408 (2025)........................................................................................................4

PODS'S REPLY I.S.O. MOT. TO DISMISS – iv
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Zoobuh, Inc. v. Better Broad., LLC.*,
    2013 WL 2407669 (D. Utah May 31, 2013)...............................................................................4

**Statutes**

15 U.S.C. § 7701(a)(11)..................................................................................................................15

15 U.S.C. § 7704(a)(2).........................................................................................................5, 9, 16

RCW 19.190.020 ............................................................................................................................3

RCW 19.190.020(1)(a) ...................................................................................................................5

RCW 19.190.020(2).......................................................................................................................13

RCW 19.190.040 ............................................................................................................................2

**Other Authorities**

16A Wash. Prac., Tort Law and Practice § 19:3 (5th ed. 2025) .......................................................8

1998 Wash. Sess. Laws Ch. 149 .....................................................................................................15

PODS'S REPLY I.S.O. MOT. TO DISMISS – v
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

Plaintiffs' and Plaintiff-Intervener State of Washington's (the "State") oppositions fail to overcome the exposed defects in Plaintiffs' Complaint.

*First*, Plaintiffs do not dispute that they failed to allege: (1) receipt of certain emails discussed in the Complaint; (2) that certain time-limited sales did not end as advertised; (3) that certain sale extensions were predetermined; and (4) that PODS had any reason to know that *Plaintiffs'* email addresses belonged to Washington residents. As such, Plaintiffs fail to allege PODS sent emails with false or misleading subject lines in violation of Washington's Commercial Electronic Mail Act ("CEMA").

*Second*, neither Plaintiffs nor the State show that Plaintiffs' CEMA allegations fall within CAN-SPAM's narrow preemption exception, which bars state regulation of merely *misleading* emails, saving only "traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1063 (9th Cir. 2009). Plaintiffs do not even try to allege knowledge, reliance, or injury. Most importantly, they fail to allege materiality—which they and the State concede is required to avoid preemption.

*Third*, both the State and Plaintiffs overread *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), which rejected a dormant Commerce Clause challenge to a state law with mere extraterritorial *effects*. "The Supreme Court did not curtail the *Baldwin-Healy* line of cases" in *National Pork*. *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025), *appeal filed*, No. 25-1694 (9th Cir. Mar. 14, 2025). And courts in this Circuit still "follow[] the precedent set in *Sam Francis*," *id.*, which makes clear that a state may not—as CEMA does—*regulate transactions occurring wholly outside its borders*, even if the statute relies on a residency hook. *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015).

*Fourth*, CEMA's nationwide deterrent effect on commercial emails is excessive compared to any putative local benefits, further violating the dormant Commerce Clause.

PODS'S REPLY I.S.O. MOT. TO DISMISS – 1
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Fifth*, Plaintiffs concede their Washington Consumer Protection Act ("CPA") claim falls with their alleged CEMA claim. *See* Dkt. 16 ("Plaintiffs-Opp.") at 25.

*Sixth*, Plaintiffs do not dispute that they failed to allege any facts supporting a claim for actual damages, which dooms their claim for treble damages.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Allege a CEMA Violation.

#### 1.    Plaintiffs Cannot Assert Claims for Emails They Did Not Receive.

Plaintiffs do not dispute that their Complaint fails to allege receipt *by Plaintiffs* of the November 28, 2023, February 18, 2025, and April 7, 2025 emails. Plaintiffs-Opp. at 3. Instead, Plaintiffs argue that these provide context of a "scheme" of misleading emails, asking the Court to refrain from evaluating the specific allegations in their Complaint. *Id.* On a motion to dismiss, the Court *must* look at Plaintiffs' individual CEMA claims. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009). Under CEMA, Plaintiffs can bring claims only for emails they received. RCW 19.190.040 (allowing damages "to the recipient" of a violative email). And the Complaint specifically cabins the universe of emails to those identified in the Complaint and Exhibit A, while reserving the right to expand the scope. *See* Compl. ¶¶ 78, 81. Because Plaintiffs do not allege receipt of these three emails, Plaintiffs cannot assert a CEMA violation with respect to them.

#### 2.    The Subject Lines Are Not False or Misleading.

The remaining seven emails fall into two categories: time-limited promotions where (1) PODS offered similar promotions at a later date; or (2) PODS extended the promotion. Plaintiffs' Opposition fails to address the fatal flaws with both.

*First,* with respect to the March 11, 2024, March 18, 2024, February 10, 2025, March 3, 2025, and May 12, 2025 emails—where similar sales were allegedly offered weeks or months later—Plaintiffs' Opposition concedes that these promotions ended as advertised, and Plaintiffs do not contend that the subject lines claimed PODS would never offer similar future promotions. Plaintiffs-Opp at 4. Instead, Plaintiffs argue that these emails were false or misleading because

PODS'S REPLY I.S.O. MOT. TO DISMISS – 2
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

PODS offered the same deal one week later, in one example, and one month later, in other examples. *See id.* But Washington's Supreme Court rejected the idea that companies are prohibited from later offering similar (or better) promotions. *See Brown v. Old Navy, LLC*, 4 Wn.3d 580, 595 (2025) ("Promotions that state 'Best Deals of the Year' are not misrepresentations and do not communicate information that retroactively becomes false (and actionable) under CEMA because market conditions change such that a better sale is later available."). And CEMA does not impose liability for subject lines that purportedly become "false" after the fact. *Id.* Additionally, many of the subject lines are—at best—inactionable, mere puffery. Statements like "last chance" are too vague to be considered representations of material fact. *See Brown*, 4 Wn.3d at 596.

*Second*, with respect to the extension of sales promoted in the November 27, 2023 and February 17, 2025 emails, Plaintiffs do not dispute their failure to allege that the extensions were predetermined (rendering the emails false when sent). And Plaintiffs ignore entirely PODS's argument that, where there is a plausible alternative explanation (i.e., that PODS extended sales in response to business considerations after sending the initial emails), "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts ***tending to exclude the possibility that the alternative explanation is true***, in order to render plaintiffs' allegations plausible." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (emphasis added) (citation omitted).

### 3. Plaintiffs Fail to Allege PODS Knew Their Emails Belonged to Washington Residents.

Plaintiffs claim only that "PODS knew it was emailing Washington residents" in general, but that is not enough. Plaintiffs must allege that PODS knew or had reason to know that ***their*** email addresses belonged to a Washington resident. RCW 19.190.020. While Plaintiffs cite to online purchases, IP address tracking, and information from email domain registrars as potential sources of residency information for email recipients, they do not claim that any of these

PODS'S REPLY I.S.O. MOT. TO DISMISS – 3
(No. 2:25-cv-02025-RAJ)

purported sources of information resulted in PODS knowing or having reason to know that *Plaintiffs' email addresses* belonged to Washington residents.[1] Plaintiffs accordingly fail to allege a CEMA violation.

### B.    CAN-SPAM Preempts Plaintiffs' Broad Application of CEMA.

Plaintiffs and the State fail to show that Plaintiffs' CEMA claim falls within the "limited, narrow exception" to CAN-SPAM preemption, reserved only for "traditionally tortious or wrongful conduct" encompassed in "falsity or deception." *Virtumundo*, 575 F.3d at 1062.

### 1.    "Misleading" Is Broader than "Falsity or Deception."

At bottom, both Plaintiffs and the State conflate "misleading" with "falsity or deception." The words "falsity, "deception," and "misleading" are not mutually interchangeable. Federal courts have recognized that falsity and deception require more than just misleading information:

- "*When an advertisement is* not literally false, but is *misleading*, '*proof that the advertising actually conveyed the implied message and thereby deceived* a significant portion of the recipients becomes critical.'" *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 3471476, at *4 (W.D. Wash Aug. 8, 2011) (emphasis added) (citation omitted).

- "Though the language is similar to the CAN–SPAM Act, the California code has been defined as *prohibitive of 'deceptive' header information only, thereby creating a more onerous burden on a plaintiff than the 'materially misleading' standard* of the CAN–SPAM Act and thereby avoiding preemption by the CAN–SPAM Act." *Zoobuh, Inc. v. Better Broad., LLC.*, 2013 WL 2407669, at *5 (D. Utah May 31, 2013) (emphasis added).

- "[F]alse and misleading are two different things. … *[B]asic logic dictates that at least some misleading statements are not false*." *Thompson v. United States*, 604 U.S. 408, 413 (2025) (emphasis added).

Washington courts recognize that "implicit in [deceptive] is 'the understanding that the actor *misrepresented* something of *material importance*.'" *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 166 (2007) (emphasis added) (citation omitted) (cited by Plaintiffs at 18), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27 (2009).

---

[1] By contrast, in *Kempf v. FullBeauty Brands Operations, LLC*, 2026 WL 395677, at *2 (W.D. Wash. Feb. 12, 2026), the plaintiff specifically alleged that her domain registrar would identify her as a Washington resident and that she clicked links demonstrating her location in Washington.

PODS'S REPLY I.S.O. MOT. TO DISMISS – 4
(No. 2:25-cv-02025-RAJ)

As Plaintiffs note, CAN-SPAM uses the word "mislead" in a separate section under a heading titled "prohibition of deceptive subject headings." 15 U.S.C. § 7704(a)(2). But that section proves PODS's point. Under CAN-SPAM, a party is liable for sending an email with a misleading subject line only if that party has "***knowledge*** fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, ***about a material fact*** regarding the contents or subject matter of the message." *Id.* (emphasis added). Stated differently, the subject line must not only be "likely to mislead," but the sender must have knowledge of the potential to mislead and the subject line must pertain to a material fact. CEMA contains no similar requirement, purporting to impose strict liability on the sender of an email if the recipient deems it misleading. *See Virtumundo*, 575 F.3d at 1063.

The Ninth Circuit's decision in *Virtumundo* also recognizes the distinction between "misleading" and "deceptive." There, the Ninth Circuit looked at CEMA in its entirety, discussing both subject lines under Subsection 1(b) and header information under Subsection 1(a) in holding that a defendant's practices must be ***actually deceptive*** for a CEMA claim to be excepted from preemption. *See Virtumundo*, 575 F.3d at 1064 (claims preempted because they "[r]elate to, at most, non-deceptive statements or omissions"). Looking to Washington law, the Ninth Circuit analyzed "misrepresent"—the standard used in Subsection 1(a)—as "representing incorrectly: to give a false, imperfect or ***misleading*** representation." *Id.* at 1059 (emphasis added) (citation omitted). It concluded these "broad definitions extend CEMA's prohibitive reach and purport to regulate a vast array of non-deceptive acts and practices," and for that reason, the plaintiff's claim under Subsection 1(a), based on header information that "misrepresents," was preempted. *Id.*

The same logic applies to Subsection 1(b), as both subsections invoke a bare "misleading" standard. *Compare* RCW 19.190.020(1)(a) (forbidding header information that "misrepresents or obscures"), *with id.* (1)(b) (forbidding commercial email that "[c]ontains false or misleading information in the subject line"). Like the word "misrepresent," the word

PODS'S REPLY I.S.O. MOT. TO DISMISS – 5
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"mislead" reaches email subject lines that are neither false nor deceptive.[2] Thus, under the logic of *Virtumundo*, claims under Subsection 1(b) based on subject lines that are merely "misleading" are preempted.

The Court must examine the specific claim Plaintiffs have pled, not merely the elements of the statute. *See Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (holding a state law claim is preempted "as-applied" if the specific claim pled is preempted, even if the statute might be valid in other circumstances); *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at \*9 (W.D. Wash. Aug. 5, 2008), *aff'd sub nom., Ferguson v. Active Response Grp.*, 348 F. App'x 255 (9th Cir. 2009) (rejecting reliance on CEMA's text in the abstract and dismissing the claim after examining the pleaded facts, which alleged at most "bare error" rather than "falsity or deception"). And here, unlike the emails addressed in *Harrington*, *Ma*, and *Kempf*,[3] Plaintiffs' alleged email subject lines cannot be characterized as deceptive or literally false.[4] At most, the emails PODS sent could be construed as misleading or "giv[ing] a wrong impression." *Mislead*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/mislead (last accessed Feb. 19, 2026). Accordingly, they are preempted.

### 2. Plaintiffs Admit They Must Allege PODS's Statements Were Material to Avoid Preemption.

To avoid this reality, Plaintiffs argue they need show only "some degree of materiality" to escape preemption under *Virtumundo*. Plaintiffs-Opp. at 9 ("*Gordon* focused on the

---

[2] For these reasons, three recent orders in this district respectfully erred in holding *Virtumundo*'s reasoning was limited to Subsection 1(a). *See Harrington v. Vineyard Vines, LLC*, 2025 WL 3677479, at \*1 (W.D. Wash. Dec. 18, 2025); *Ma v. Nike, Inc.*, 2026 WL 100731, at \*2 (W.D. Wash. Jan. 14, 2026); *Kempf*, 2026 WL 395677, at \*4.

[3] In holding CEMA's subject-line provision is not preempted by CAN-SPAM, the *Harrington* and *Kempf* courts followed the outdated, text-only analysis from *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040 (E.D. Wash. 2005). *See Harrington*, 2025 WL 3677479, at \*1; *Kempf*, 2026 WL 395677, at \*4. But the *Virtumundo* court rejected that analysis and attendant holding that Subsections 1(a) and 1(b) were not preempted, instead requiring additional scrutiny of the underlying allegations, and holding Subsection 1(a) was preempted **based on the claims alleged**. *Virtumundo*, 575 F.3d at 1059, 1063–64.

[4] Plaintiffs' and the State's citations to *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. 2019)—a case that did not address CAN-SPAM and which was before *Brown* expanded CEMA liability—are irrelevant.

PODS'S REPLY I.S.O. MOT. TO DISMISS – 6
(No. 2:25-cv-02025-RAJ)

materiality of the alleged falsehood or deception."); *cf.* Dkt. 22 ("State-Opp.") at 7–8 (citing cases confirming that a plaintiff must allege materially misleading statements to evade CAN-SPAM preemption). In doing so, they and the State reject PODS's cited authority because it did not concern CEMA claims. Plaintiffs-Opp. at 17 n.9; State-Opp. at 6–7. But CEMA's failure to require materiality is precisely the reason Plaintiffs' CEMA claim is preempted.[5]

Regardless, Plaintiffs' own citations demonstrate the emails must be material *to the recipient*. *Silverstein v. Keynetics Inc.*, 2016 WL 7475616, at \*4 (N.D. Cal. Dec. 29, 2016) (holding false "from" names in email headers were immaterial because the plaintiff did "not allege that the individuals listed in the 'from' name fields were actually known to him"), *aff'd*, 727 F. App'x 244, 246 (9th Cir. 2018) (claim preempted by CAN-SPAM because "Silverstein [did not] allege that the 'From' names *deceived him* as to the nature of the e-mails" (emphasis added)). Plaintiffs and the State reiterate this point further by citing to cases involving a California anti-spam statute that requires materiality *and* knowledge by the defendant.[6]

Plaintiffs ultimately ask the Court to employ the materiality standard from *Kousisis v. United States*, 605 U.S. 114, 131 (2025), i.e., that a fact is material if a reasonable person would attach importance to it in how they proceed. According to Plaintiffs, the mere fact that PODS sends emails is proof that consumers "attach importance" to them. But Plaintiffs fail to address

---

[5] The State twists the Washington Supreme Court's decision in *Brown*, noting the "*Brown* court held CEMA's subject line provision addresses *deceptive* 'representations of fact—like the duration or availability of a promotion, its terms and nature, … , and other facts Washington residents *would depend on* in making their consumer decisions.'" State-Opp. at 6 (emphasis added) (quoting *Brown*, 4 Wn.3d at 596). But *Brown* expanded liability for "*any* false or misleading information" in subject lines. 4 Wn.3d at 596; *see* 4 Wn.3d at 593 (acknowledging the "meaning of '[c]ontains false or misleading information in the subject line' may be broad"). *Brown* certainly did not "harmonize[]" CEMA with CAN-SPAM, as the majority opinion does not mention CAN-SPAM at all.

[6] *See, e.g.*, *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 941 (N.D. Cal. 2009) (analyzing a statute barring subject lines "that a person *knows* would be likely to mislead a recipient, acting reasonably under the circumstances, about a *material fact* regarding the contents or subject matter of the message" (emphasis added)); *Asis Internet Servs. v. Member Source Media, LLC,* 2010 WL 1610066, at \*5 (N.D. Cal. Apr. 20, 2010) (stressing the importance of defendant's "intentional deception" to its holding that plaintiff's claim arose from a traditional tort theory and thus was not preempted); *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at \*11–13 (N.D. Cal. Apr. 1, 2010) (highlighting that "material, intentional misrepresentation[s]," "intentional deception," and "knowing" misrepresentations were needed to avoid preemption).

PODS'S REPLY I.S.O. MOT. TO DISMISS – 7
(No. 2:25-cv-02025-RAJ)

*Kousisis*'s teaching that materiality "[r]esembl[es] a but-for standard, … ask[ing] whether the misrepresentation 'constitut[ed] an inducement or motive' to enter into a transaction." *Kousisis*, 605 U.S. at 131 (citation omitted). Thus, simply receiving an email—which Plaintiffs have never read—does not make it material to them *or anyone*, even under *Kousisis*.[7] And the advertisements are not material to them simply because Plaintiffs are "consumers." Under Plaintiffs' circular logic, *any* marketing email would be excepted from CAN-SPAM preemption. This is why Washington courts require more than materiality in the abstract: the statement must be material *to the plaintiff*. *See* Mot. at 13 (collecting cases).

Regardless, the emails are likewise immaterial under Plaintiffs' reasonable-person standard because "[a] material fact is one that not only influences and affects the transaction, but also goes to its *very essence and substance*." 16A Wash. Prac., Tort Law and Practice § 19:3 (5th ed. 2025) (emphasis added). Unlike quality, price, or quantity, a consumer's decision to make a purchase at the beginning or end of a sale has no impact on the fundamentals of the bargain. Either way, they receive the same deal for the same price.

Because Plaintiffs cannot allege that the subject lines were material to anyone, let alone them, their CEMA claim is preempted.[8]

### 3. Plaintiffs Cannot Allege Knowledge, Reliance, or Injury.

In admitting that materiality is necessary to avoid preemption, Plaintiffs and the State also implicitly recognize—as *Virtumundo* makes clear—that a claim must advance certain elements of "traditional tort theories such as claims arising from fraud or deception" to evade

---

[7] In any event, *Kousisis* discussed materiality in the context of wire fraud and explicitly chose not to define the term. 605 U.S. at 132.

[8] Plaintiffs cite to an insider-trading case to argue materiality is a mixed question of fact and law not to be decided on a motion to dismiss. Plaintiffs-Opp. at 12 (citing *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)). But courts reviewing CAN-SPAM say no such thing. *Silverstein*, 2016 WL 7475616, at *4 (granting a motion to dismiss where emails did "not amount to material falsity or deception that is sufficient to avoid preemption"). And, contrary to Plaintiffs' assertions, "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the complaint." *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (citation modified) (quoting *Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1199 n.5 (N.D. Cal. 2009)).

PODS'S REPLY I.S.O. MOT. TO DISMISS – 8
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

preemption. 575 F.3d at 1061–63. Yet Plaintiffs do not dispute their failure to allege (1) knowledge, (2) reliance, or (3) injury. Their claim should be dismissed accordingly.

*No Knowledge.* According to Plaintiffs, PODS's knowledge that it would offer multiple sales throughout the year somehow renders it false or misleading to offer *any* time-limited sales. Plaintiffs-Opp. at 15–16. This amounts to a rehash of Plaintiffs' incorrect assumption that it is *per se* illegal to offer periodic discounts. And it falls well short of the standards articulated in CAN-SPAM or at common law. *See* 15 U.S.C. § 7704(a)(2) (requiring "actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient"); *Adams v. King County*, 164 Wn.2d 640, 662 (2008) (requiring "the speaker's knowledge of … falsity").

*No Reliance.* Plaintiffs do not dispute that they fail to allege reliance. Instead, they reject wholesale any requirement to allege reliance, relying on a few district court decisions. But Plaintiffs' own citation recognizes a circuit split on the issue, which admittedly, "*Virtumundo* did not clearly resolve." *Subscriberbase Inc.*, 2010 WL 1267763, at *10. And Plaintiffs' cases stray further from any persuasive pull because they interpret California's anti-spam statute—not CEMA. Indeed, those same cases acknowledge that the California statute is "quite distinct from the Washington statute in *Virtumundo*. This [California] provision does not prohibit any conduct that is not prohibited by the CAN–SPAM Act." *Id.* at *11. Indeed, unlike CEMA, California's statute requires knowledge, materiality, and deception. *See id.* at *9.

*No Injury.* Plaintiffs acknowledge they were "not in any way misled or deceived," *Virtumundo*, 575 F.3d at 1063, claiming instead that receiving an unread email is injury enough. Plaintiffs-Opp. at 16. But they fail to explain why a claim that must "sound in tort" does not require any semblance of actual harm. *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006); *Virtumundo* 575 F.3d at 1064 (claim with "no basis in traditional tort theories … f[ell] beyond the ambit of the exception language in the CAN–SPAM Act's express preemption clause").

PODS'S REPLY I.S.O. MOT. TO DISMISS – 9
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**C.    CEMA Is Invalid Under the Dormant Commerce Clause.**

Plaintiffs' dormant Commerce Clause analysis is just as tangled as their preemption analysis. Plaintiffs and the State invent their own *per se* rule: that the dormant Commerce Clause applies "only" to state laws that "discriminate in favor of their own residents and economic interests." State-Opp. at 9; Plaintiffs-Opp. at 19–20. But the Supreme Court in *National Pork* acknowledged that it "has left the 'courtroom door open' to [dormant Commerce Clause] challenges premised on 'even nondiscriminatory burdens.'" 598 U.S. at 379–80 (citation omitted). And the State's own authority notes discrimination is not required: "***Absent*** discrimination, we will uphold the law 'unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) (quoting *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087–88 (9th Cir. 2013)).

Thus, the Supreme Court left intact the "three theories" under which states can violate the dormant Commerce Clause: "(1) discrimination, (2) extraterritorial regulation, and (3) excessive burden on interstate commerce." *Ashlynn Mktg. v. Pan*, 2025 WL 1953229, at *2 (S.D. Cal. July 16, 2025). Unhelpfully, Plaintiffs' "arguments bleed together" and address these three independent concepts simultaneously. *Flynt v. Bonta*, 131 F.4th 918, 925–26 (9th Cir. 2025). Plaintiffs' CEMA claim fails because: (1) Plaintiffs seek to regulate entirely extraterritorial conduct; and (2) because CEMA imposes excessive burdens on interstate commerce.

**1.    CEMA Regulates Entirely Extraterritorial Conduct.**

**a.    *National Pork* Did Not Overturn Binding Ninth Circuit Law Prohibiting State Regulation of Entirely Extraterritorial Conduct.**

While Plaintiffs call the dormant Commerce Clause "practically moribund," their own citations say otherwise: "Today's majority does not pull the plug [on the dormant Commerce Clause]. For good reason: … the basic concern of our Commerce Clause jurisprudence [is] that there be 'free private trade in the national marketplace.'" *Nat'l Pork*, 598 U.S. at 395 (Roberts, C.J., concurring) (citations omitted). Accordingly, Plaintiffs' and the State's assertions that

PODS'S REPLY I.S.O. MOT. TO DISMISS – 10
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*National Pork* overruled the holding in *Healy*—or nullified the cases in the Western District of Washington like *Hartman* and *Booth*—is untrue. Plaintiffs-Opp. at 21. The fractured decision in *National Pork* merely dispelled a *per se* rule against state laws with extraterritorial ***effects***. But CEMA ***directly regulates*** conduct occurring ***wholly outside*** of Washington, which, under binding Ninth Circuit precedent, is unlawful.

In *National Pork*, the Supreme Court was asked "to fashion two new and more aggressive constitutional restrictions" in the form of *per se* rules against ***extraterritorial effects***, in the context of a statute that "regulates only products that companies choose to sell 'within' California." *See id.* at 364, 376 n.1 (citation omitted). As such, it did not address a law that directly regulated wholly out-of-state conduct. *See id.* Several courts have noted and applied this distinction, finding that *National Pork* left untouched case law related to state laws that directly regulate out-of-state transactions:

- The "Supreme Court did not curtail the *Baldwin-Healy* line of cases" and courts in this Circuit still "follow[] the precedent set in *Sam Francis* and *Sharpsmart*." *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025).

- *National Pork* "did not disturb the constitutional bar on state laws that 'directly regulate out-of-state transactions by those with ***no*** connection to the State.'" *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1256 n.1 (S.D. Cal. 2024) (citation modified) (emphasis added), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal. Mar. 31, 2025).

- *National Pork* "did not change the rule that a state may not directly regulate transactions that take place wholly outside the state and have no connection to it." *Ass'n for Accessible Meds. v. Ellison*, 704 F. Supp. 3d 947, 953 (D. Minn. 2023), *aff'd*, 140 F.4th 957 (8th Cir. 2025).

In fact, the Supreme Court in *National Pork* declined to vitiate the longstanding principle that laws may not "directly regulate[] out-of-state transactions by those with no connection to the State." 598 U.S. at 376 n.1 (emphasis omitted).

As the State recognizes, "several Justices wrote separately" in *National Pork*. State-Opp. at 13. The Ninth Circuit subsequently confirmed that because "the [*National Pork* Court] did not agree upon a 'single rationale'" for its "fractured decision," only the specific result in that case is

PODS'S REPLY I.S.O. MOT. TO DISMISS – 11
(No. 2:25-cv-02025-RAJ)

binding. *Iowa Pork Producers Ass'n v. Bonta*, 2024 WL 3158532, at *2, *3 (9th Cir. June 25, 2024), *cert. denied*, 145 S. Ct. 2866 (2025).[9]

Thus, the *Baldwin-Healy* line of cases—and the Ninth Circuit's decision in *Sam Francis*—still stands, and makes clear that a state may not regulate transactions occurring wholly outside its borders.

### b.   *Sam Francis Freedom Foundation* **Applies Here.**

Knowing this, the State wrongly characterizes PODS as challenging the extraterritorial *effect* of CEMA.[10] State-Opp. at 11–12. But CEMA applies to emails sent to Washington residents even when they are located elsewhere—thus regulating wholly out-of-state transactions. *Sam Francis*, 784 F.3d at 1323 (invalidating statute that "ha[d] no necessary connection with the state *other than the residency of the seller*" (emphasis added)). That situation is not "hypothetical," complaints about facial challenges notwithstanding. State-Opp. at 10; Plaintiffs-Opp. at 20. Plaintiffs *in this case* fail to allege they were in Washington when they received the at-issue emails and seek to represent a class of Washington residents who received the emails, without regard to whether the class members were in Washington at the time of receipt. And in a facial challenge under the dormant Commerce Clause, "[s]o long as the statutory language *applied* to analyze that scenario—on its face—offends the Constitution, the law must fall." *Nat'l Shooting Sports Found.*, 718 F. Supp. 3d at 1257.[11]

---

[9] Plaintiffs rely heavily on *Flynt*, but that involved a California law limiting *licensees of California cardrooms* from owning more than 1% of an out-of-state business associated with casino-style gambling. 131 F.4th at 922. As such, the Ninth Circuit made clear that *Sam Francis* is "distinguishable" because "unlike the statute in *Sam Francis*, which we characterized as 'involving regulation of wholly out-of-state conduct,' the California statutes at issue here 'regulate *in-state conduct* with allegedly significant out-of-state practical effects.'" *Id.* at 930 (citation modified) (citation omitted); *see also id.* at 929 ("[T]he transaction that California law most directly regulates is the licensing of cardrooms in the state."). *Flynt* therefore merely reiterated *National Pork*'s uncontroversial holding that there is no *per se* rule against state laws with extraterritorial *effects*.

[10] The Court in *Kempf* likewise did not address *Sam Francis* and conflated *National Pork*'s holding that there is no per se ban on extraterritorial *effects* with the argument raised here regarding regulation of entirely extraterritorial conduct. 2026 WL 395677, at *6.

[11] The State accuses PODS of "ignor[ing] the plain language of CEMA." State-Opp. at 10. But CEMA's residency hook (i.e., its text) renders it unconstitutional. CEMA also potentially (and fatally) sweeps in *former* or *occasional* Washington residents, as it applies to defendants that "know[] or ha[ve a] reason to

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The State also insists that Washington may apply CEMA to residents "who are temporarily outside the state" because Washington "has a state interest in protecting its consumers." State-Opp. at 13. But Ninth Circuit precedent has already rejected this attempted residency hook through a state interest justification. *See Sam Francis*, 784 F.3d at 1323 (without discussion of the California statute's purpose or benefits, holding it "violates the dormant Commerce Clause" because it "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders'" despite being limited to transactions where "***the seller resides in California*** or the sale takes place in California" (emphasis added) (citation modified)).

And contrary to the State's assertion, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 819 (1985), did not hold that a state can rely on a residency hook to regulate wholly out-of-state conduct. *Id*. at 819, 822–23. Rather, the Supreme Court "***reverse[d]*** [the state court's] judgment insofar as it held that Kansas law was applicable to all of the transactions which it sought to adjudicate" even though the defendant "own[ed] property and conduct[ed] substantial business in the State." *Id.* (emphasis added). Indeed, a California federal court has already rejected a nearly identical, post-*National Pork* attempt to evade the extraterritoriality restriction, reasoning that, "despite the State having sufficiently strong ties to the subjects of regulation (namely, attempting to regulate state residents' conduct), the Ninth Circuit struck down the statute[]" in multiple prior cases. *See Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d at 1033–34.[12]

While the State cites to *Ferguson v. Friendfinders, Inc.* to suggest "similar statutes" are permissible, the court there held "the statute would not reach conduct occurring 'wholly' outside the State" because it was limited to email sent "***via equipment located in California***." 94 Cal. App. 4th 1255, 1264–65 (2002) (emphasis added). And CEMA is not insulated from the dormant

---

know" of Washington residency, an element that can be met if "information [about residency] is available, upon request" from a third party that may maintain outdated records. RCW 19.190.020(2).

[12] Plaintiffs also note *State v. Heckel* found CEMA had "no 'sweeping extraterritorial effect.'" 143 Wn.2d 824, 838–39 (2001) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642 (1982)); Plaintiffs-Opp. at 24. But the Supreme Court in *Edgar* did not require a "sweeping extraterritorial effect" and confirmed that no balancing of the local benefits is required where the conduct "takes place wholly outside of the State's borders." 457 U.S. 624, 642–43.

PODS'S REPLY I.S.O. MOT. TO DISMISS – 13
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Commerce Clause simply because it polices electronic transactions. Courts have regularly applied the extraterritoriality restriction to statutes regulating communications and other intangible conduct. *See* Mot. at 16–17 (collecting cases); *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d at 1033, 1036 (invalidating statute regulating out-of-state settlement agreements).

Plaintiffs cannot rely on their residency to survive a motion to dismiss. *Compare In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (Courts do not "accept as true … unwarranted deductions of fact"), *with* Plaintiffs-Opp. at 20 n.10. Because Plaintiffs fail to allege that they were in Washington when they received each email, CEMA is invalid as applied. CEMA is also facially invalid, because, as drafted, "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cnty. of S.F.*, 253 F.3d 461, 467 (9th Cir. 2001).[13] Like the statute challenged in *Sam Francis*, CEMA regulates transactions occurring out of state merely because they involve a Washington resident and therefore "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.'" 784 F.3d at 1323 (citation omitted). Facially and as applied, CEMA is unconstitutional under the dormant Commerce Clause.

### 2. CEMA Excessively Burdens Interstate Commerce.

A statute may still be unconstitutional absent discrimination and extraterritorial regulation if "the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." *Int'l Franchise Ass'n, Inc.*, 803 F.3d at 399 (citation modified) (citation omitted) (cited by State-Opp. at 9); *see also Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1150 (9th Cir. 2012) ("it is possible for nondiscriminatory regulations to place a

---

[13] By contesting the applicable standard for facial challenges, the State "presumably believes that [its quoted language from *Wash. State Grange*] dooms a facial challenge because this statute *could* be applied to purely in-state commercial transactions, which a state may constitutionally regulate." *Nat'l Shooting*, 718 F. Supp. 3d at 1257. But "by that logic, a state law policing economic activity *everywhere in the world*—including within the state—would be immune to facial attack." *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

significant burden on interstate commerce and thereby violate the dormant Commerce Clause") (cited by State at 18).

CEMA's burden on interstate commerce is clearly excessive compared to any putative local benefits. PODS contests not only compliance costs but also the "deterrent effect on commercial speech" of "a statute that authorizes enormous statutory damages"—a burden recognized by the Fourth Circuit as an "important interest[]," in addition to compliance costs due to the "difficult[y] for businesses [in] determin[ing] where Internet users are located." *Omega World Travel, Inc*, 469 F.3d at 356.

Given the nature of email, CEMA's residency requirement fails to cabin that nationwide burden. *Contra* State-Opp. at 16. As Congress has recognized, "since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of the[] disparate [state] statutes they are required to comply." 15 U.S.C. § 7701(a)(11). Indeed, a "single e-mail could instantaneously implicate the laws of multiple jurisdictions as it journeys through cyberspace." *Virtumundo*, 575 F.3d at 1063. Plaintiffs' appeal to *State v. Heckel*, 143 Wn.2d 824 (2001)—a decision from the dial-up internet era, before Congress enacted CAN-SPAM—fails to reckon with that significant modern interest. *See* Mot. 18–19; *cf. Virtumundo*, 575 F.3d at 1050 ("Especially in this arena, the engine of innovation moves far more quickly and nimbly than the methodical pace of legislation.").

Especially in contrast to the burden, CEMA's putative local benefits are minimal. While the intent section cited by the State has since been repealed, it demonstrates the outdated motivations behind CEMA's passage. *See* State-Opp. at 19. The Legislature sought "immediate relief to *interactive computer service providers*" who "indicate[d] that their systems [could not] handle the volume of commercial electronic mail being sent and that filtering systems fail[ed] to screen out unsolicited commercial electronic mail messages." 1998 Wash. Sess. Laws Ch. 149 (emphasis added); *see also Heckel*, 143 Wn.2d at 833–34 (expressing similar concerns). Neither the State nor Plaintiffs discuss this concern, perhaps because it is antiquated after almost three decades of technological advancement. *See* Mot. 18–19 (discussing CEMA's passage at the

PODS'S REPLY I.S.O. MOT. TO DISMISS – 15
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

advent of the internet). As for consumer protection, Congress has already enacted a law that regulates and clearly defines the contours of "misleading" email subject lines and cautioned against conflicting, piecemeal state enforcement. Washington's local interest in independently regulating misleading email subject lines is comparatively minimal against the backdrop of an existing federal standard addressing the same type of conduct. *See* 15 U.S.C. § 7704(a)(2).[14]

CEMA is further unconstitutional under the dormant Commerce Clause given its excessive burden on interstate commerce.

### D. Plaintiffs Admit Their CPA Claim Fails.

Plaintiffs' Opposition acknowledges their CPA claim rises or falls with their CEMA claim. *See* Plaintiffs-Opp. at 25. Because Plaintiffs fail to allege a single CEMA violation, the Court should dismiss their CPA claim. *See* Mot. at 22.

### E. Plaintiffs' Claim for Actual and Treble Damages Fails.

Plaintiffs do not dispute that they allege *no* facts suggesting they sustained actual damages, such as allegations that they opened or read the emails or purchased products or services in reliance on the email subject lines. *See generally* Plaintiffs-Opp. Instead, Plaintiffs cite *Brown* to argue that mere receipt of the email suffices to sustain a claim for actual damages. *Id.* at 25. But *Brown* says no such thing. In *Brown*, the Washington Supreme Court recognized that receipt of the email is sufficient grounds to satisfy the CPA's injury prong, entitling a plaintiff to *statutory* damages. 4 Wn.3d at 592. But it in no way held that mere receipt of an email, without more, creates a claim for actual damages. *See id.* Because the "complaint lacks any factual allegations that would support a finding of actual damages," Plaintiffs' claim for actual damages must be dismissed. *Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011).

---

[14] CAN-SPAM does not insulate CEMA from constitutional scrutiny under the dormant Commerce Clause. *Contra* Plaintiffs-Opp. at 18–19. "[F]or a state regulation to be removed from the reach of the dormant Commerce Clause, congressional intent must be **unmistakably clear**." *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 91 (1984) (emphasis added). CAN-SPAM preempts CEMA. *See supra* Section II.B. But even if it did not, being "consistent with federal policy—or even … further[ing] the goals we might believe that Congress had in mind—is an insufficient indicium of congressional intent." *Id.* at 92.

PODS'S REPLY I.S.O. MOT. TO DISMISS – 16
(No. 2:25-cv-02025-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs likewise do not dispute that Washington law permits treble damages only upon awards of actual damages. Thus, Plaintiffs' "failure to show actual monetary damages precludes the recovery of treble damages under the CPA." *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 565 (1992) (distinguishing between "injuries cognizable under the [Consumer Protection] Act" from "treble damages [which] are based upon 'actual' damages" (quoting *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 855 (1990)). Plaintiffs imply otherwise, but courts routinely consider "whether [to] dismiss … treble damages request[s] under Rule 12(b)(6)." *Jones v. County of San Bernardino*, 2022 WL 3138880, at *7 (C.D. Cal. May 12, 2022) (dismissing claim for treble damages barred by statute); *Jang v. Life Ins. Co.*, 2017 WL 11632250, at *3 (C.D. Cal. Sept. 22, 2017) (dismissing request for treble damages because there was "no statutory basis").

### III.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice, as they cannot cure the fundamental defects in their claims.

DATED this 20th day of February, 2026.

Davis Wright Tremaine LLP
*Attorneys for Defendant PODS Enterprises, LLC*

By *s/ Lauren B. Rainwater*
Lauren B. Rainwater, WSBA #43625
Rachel Herd, WSBA #50339
Caitlyn Courtney, WSBA #62344
Joshua Peck, WSBA #64328
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206-622-3150
E-mail: laurenrainwater@dwt.com
E-mail: rachelherd@dwt.com
E-mail: caitlyncourtney@dwt.com
E-mail: joshpeck@dwt.com

*I certify that this memorandum contains 6,256 words in compliance with the Local Civil Rules.*

PODS'S REPLY I.S.O. MOT. TO DISMISS – 17
(No. 2:25-cv-02025-RAJ)